**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| **NIHAL FARAH, and on behalf of minor children A.M., E.M., O.M., and O.M.**<br><br>Plaintiffs,<br><br>v.<br><br>**SOUTHAMPTON CONDOMINIUMS OWNERS ASSOCIATION; THE GOVERNOR GROUP, LLC; NEST PROPERTY MANAGEMENT; CALICO PROPERTIES, LLC; DAVID CARPENTER.**<br><br>Defendants. | CASE NO.<br><br><br><br>**COMPLAINT** |

**INTRODUCTION**

1. In hallmark Civil Rights legislation, Congress passed the Fair Housing Act (FHA) in 1968 outlawing discrimination in housing and advancing equal housing opportunity. The FHA prohibits, among other things, the refusal to rent because of race, color, religion, or national origin, as well as a broad anti-interference provision to protect people who exercise their fair housing rights.

2. Ms. Farah and her family made a choice to move to and live in east Iowa City in a predominantly White neighborhood, living in and renting a condo, and attending good schools. She was unable to make this move without her Section 8 Housing Choice Voucher helping to pay a portion of the rent. Defendants initially allowed Ms. Farah and her family to move in, but eventually made a decision to target Ms. Farah – who is Black/African-American of Muslim faith and grew up in Sudan –  for removal from the condo, while using Ms. Farah's

use of a Section 8 Housing Choice Voucher as the excuse. They also targeted her with frivolous fees.

3. After Ms. Farah filed a fair housing administrative complaint with the United States Department of Housing and Urban Development, which was ultimately transferred to the Iowa Office of Civil Rights for processing, Defendants refused to fix basic items in Ms. Farah's unit, told her they would not address these issues until <u>after</u> she and her children moved out, and have continued to try to force her and her children out of their home to this very day.

4. Defendants' course of conduct violates the FHA's refusal to rent provision (42 U.S.C. § 3604(a)), unlawful terms and conditions provision (42 U.S.C. § 3604(b)), and broad anti-interference provision (42 U.S.C. § 3617).

**JURISDICTION AND VENUE**

5. Jurisdiction in this Court is proper under 28 U.S.C. § 1343, because this lawsuit is a "civil action authorized by law" to "recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights" under the FHA.

6. Moreover, the FHA specifically provides for enforcement by private persons in United States District Court. 42 U.S.C. § 3613(a)(1)(A).

7. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the FHA.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the rental property in question is in this judicial district and all of the events and/or omissions giving rise to his lawsuit occurred in this judicial district.

9. Venue is also proper in this judicial district pursuant to 28 U.S.C. §§§ 1391(b)(1); 1391(c); & 1391(d) as one or more of the Defendants reside in this judicial district, including The

Governor Group, LLC (registered principal office address of 428 Westcor Drive, Coralville, Iowa), Nest Property Management (registered fictitious name for The Governor Group, LLC), and Calico Properties, LLC (registered principal office address of 308 E. Burlington Street, #173, Iowa City, Iowa).

## PARTIES

10. Plaintiff Nihal Farah is an individual who resides in Iowa City, Iowa. She rents a condo at 4387 E. Court Street in Iowa City, the rental property in question in this lawsuit.

11. Plaintiff's minor children – A.M., E.M., O.M., and O.M. – reside with her.

12. Defendant Southampton Condominium Owners Association is the home owners association (HOA) covering multiple properties in east Iowa City, including the condo at 4387 E. Court Street in Iowa City, Iowa (hereinafter "the HOA").

13. Defendant Calico Properties, LLC is the listed owner of the condo at 4387 E. Court Street in Iowa City, and its registered principal office address is 308 E. Burlington Street, #173, Iowa City, Iowa.

14. On information and belief, Defendant David Carpenter resides in Bellevue, Washington.

15. Defendant Carpenter is the investor and owner of the condo at 4387 E. Court Street in Iowa City and is the person who created Calico Properties, LLC as the listed owner.

16. Defendant Carpenter has invested in and/or owns over 80 rental properties around the country.

17. Defendant Nest Property Management (the registered fictitious name for The Governor Group, LLC) leases and manages over a thousand rental properties in Iowa on behalf of property owners, including leasing and managing the rental property at 4387 E. Court Street in Iowa City, Iowa.

18. On information and belief, one or both of the property owner Defendants – Carpenter and/or Calico Properties, LLC – contract with Nest Property Management to lease and manage the condo at 4387 E. Court Street in Iowa City.

19. Defendant The Governor Group, LLC is the legal name for Nest Property Management, with a registered principal office address of 428 Westcor Drive, Coralville, Iowa.

20. On information and belief, one or both of the property owner Defendants – Carpenter and/or Calico Properties, LLC – contract with The Governor Group, LLC to lease and manage the condo at 4387 E. Court Street in Iowa City.

**FACTS**

21. In 1968, President Johnson's Kerner Commission (Commission) determined that "residential segregation and unequal housing and economic conditions" impacted families across American cities, and that we were "moving toward two societies, one black, one white – separate and unequal." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 529 (2015). The Commission recommended "a comprehensive and enforceable open-occupancy law" to prohibit discrimination "in the sale or rental of any housing." *Id.* at 529-530.

22. That same year, one week after the tragic assassination of Dr. Martin Luther King, Jr., Congress responded by passing the FHA, and declaring "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." Pub. L. No. 90-284, title VIII, § 801, 82 Stat. 81 (April 11, 1968); *see also* 42 U.S.C. § 3601.

23. In Iowa City, it has been observed that there is increasing Black/White segregation, and that the Section 8 Housing Choice Voucher program can mitigate the increasing segregation. *See 2019 Iowa City Analysis of Impediments to Fair Housing Choice,* at 10 & 29.

24. Plaintiff Nihal Farah (Ms. Farah) is Black and African-American. So are her minor children.

25. Ms. Farah and her children are low-income. Ms. Farah's Section 8 Housing Choice Voucher enables her and her four children to afford the rent and continue to reside in the condo at 4387 E. Court Street in Iowa City, Iowa.

26. The condo at 4387 E. Court Street in Iowa City is in a Census Tract that has approximately 3% Black or African-American residents. The Census Tract immediately to the south (of highway 6) and west in Iowa City has approximately 17% Black or African-American residents.

27. Ms. Farah's Section 8 Housing Choice Voucher, which is authorized under Section 8 of the Housing Act of 1937 (42 U.S.C. § 1437f(o)) and funded by Congress, is administered through the Iowa City Housing Authority.

28. Approximately 50% of tenants with Section 8 Housing Choice Vouchers in Iowa City are Black/African-American, while approximately 9% of the total population in Iowa City are Black/African-American. *See* Attachment A, p. 7.

29. Ms. Farah grew up in Sudan in east Africa.

30. Ms. Farah is also Muslim and wears a customary head scarf, or a hijab.

31. At all relevant times in this complaint Defendants and/or their agents were aware of Ms. Farah's race and that of her children.

32. At all relevant times in this complaint Defendants and/or their agents were aware of Ms. Farah's color and that of her children.

33. At all relevant times in this complaint Defendants and/or their agents were aware that Ms. Farah grew up in Africa.

34. At all relevant times in this complaint Defendants and/or their agents were aware of Ms. Farah's religion.

35. On or around February 4, 2022, Ms. Farah and her children moved into the condo at 4387 E. Court Street in Iowa City, Iowa (hereinafter "the condo").

36. On or around February 4, 2022, Defendants and/or their agents began receiving monthly rental payments from both Ms. Farah and the Iowa City Housing Authority, through the Section 8 Housing Choice Voucher program.

37. Throughout 2022, and to date, Ms. Farah and her children have made the condo their home.

38. The condo is a three-bedroom, townhouse-style property.

39. There are multiple similar condos in the neighborhood and in the HOA.

40. One of Ms. Farah's children, O.M., is autistic, and living in a townhouse-style neighborhood is preferable to a more condensed multi-family unit where O.M. becomes dysregulated.

41. The neighborhood elementary school, Hoover Elementary, is the newest school in Iowa City.

42. Ms. Farah's children, including O.M., who has an Individualized Education Plan at Hoover Elementary, are all thriving and doing better than they were at their prior residence.

43. Ms. Farah and her children love their home and their neighborhood and do not want to move.

44. Ms. Farah takes pride in taking good care of and keeping her condo clean.

45. On information and belief, the owner members of the HOA are White.

46. On information and belief, most of the other tenants the owner members of the HOA rent to are also White.

47. Proxy discrimination is sometimes employed in violation of the FHA. *Sharpvisions, Inc. v. Borough of Plum*, 475 F. Supp. 2d 514, 524-525 (W.D. Penn. Jan. 26, 2007) (holding that ordinance labeling a home where even one person with disabilities resides and receives assistance as a "group home", requiring special permits and hearings, is "proxy" disparate treatment discrimination against individuals with disabilities under the FHA).

48. Stated discrimination against tenants with a Section 8 Housing Choice Voucher is well-known to be proxy discrimination based on race, color, and/or national origin. Martha Galvez and Brian Knudsen, *Discrimination Against Voucher Holders and the Laws to Prevent It: Reviewing the Evidence on Source of Income Discrimination*, CITYSCAPE, 148 (2024) ("voucher holders tend to be disproportionately Black or Latino, and housing advocates, researchers, and practitioners often note that landlords who refuse to accept vouchers may use voucher status as a proxy for race or other characteristics that are protected from discrimination under the Fair Housing Act – such as disability or having children in the household") (available at https://www.huduser. gov/portal/periodicals/cityscape/vol26num2/ch7.pdf) (last visited February 27, 2026).

49. The United States Attorney General recognized and provided guidance memorandum (hereinafter "guidance memo") on proxy discrimination for "[e]ntities receiving federal funds." *See Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination*, Office of Attorney General, July 29, 2025, p. 1 (available at https://www.justice.gov /ag/media/1409486/dl) (last visited February 27, 2026).

50. Defendants, by receiving federal funds through the Section 8 Housing Choice Voucher program, are covered by this guidance memo.

51. The guidance memo indicates unlawful proxies may be "selected because they correlate with, replicate, or are used as substitutes for protected characteristics." *Id* at p. 5.

52. On November 28, 2023, Defendants, through their agent, Vera Parker, an employee of Defendant Nest Property Management and/or The Governor Group LLC, notified Ms. Farah that her tenancy would be terminated at the end of her lease, in January of 2025, because Ms. Farah has a Section 8 Housing Choice Voucher.

53. On information and belief, Defendants and/or their agents used the Section 8 Housing Choice Voucher as a proxy to discriminate against and remove Ms. Farah and her children based, in part, on race, color, religion, and/or national origin.

54. On or around May 8, 2024, Defendants and/or their agents again targeted Ms. Farah, this time with a $200 charge, with the HOA assuming, on the basis of her race, color, and/or national origin, that Ms. Farah left trash bags on the ground near the dumpster.

55. Ms. Farah felt ashamed and extremely embarrassed to be further targeted in this way by the HOA.

56. Ms. Farah contacted Defendants, through their agent, Vera Parker, an employee of Defendant Nest Property Management and/or The Governor Group LCC, who agreed to remove the charge.

57. On or around May 17, 2024, Ms. Farah, through the undersigned counsel, filed a fair housing administrative complaint against Defendants with the United State Department of Housing and Urban Development (HUD) concerning her and her family's treatment.

58. HUD then referred Ms. Farah's fair housing administrative complaint to the Iowa Office of Civil Rights, which is funded by HUD to help process these administrative complaints. The Iowa Office of Civil Rights formally began processing of the complaint on September 19, 2024.

59. Shortly thereafter, on October 2, 2024, Ms. Parker texted Ms. Farah that Defendants would not work on conditions issues in her unit, including her kitchen closet door which was off the hinges as well as the clothes dryer that did not work properly, and would "work on most of [the repair issues] after Complainant moved out."

60. The fair housing administrative complaint process continued for several months, and

Defendants accepted Ms. Farah's Section 8 Housing Choice Voucher payments while the complaint was pending.

61. During the pendency of Ms. Farah's fair housing administrative complaint, President Trump also issued an Executive Order purporting to "eliminate the use of disparate-impact liability in all contexts to the maximum degree possible to avoid violating the Constitution, Federal civil rights laws, and basic American ideals." *See* Executive Order 14281 of April 23, 2025.

62. On or around July 9, 2025, the Iowa Office of Civil Rights issued a determination, finding Ms. Farah may establish a "significant adverse impact of Respondent's decision [to not accept Section 8 Housing Choice Voucher] upon Black/African American individuals," but said Ms. Farah failed to demonstrate probable cause of a fair housing violation based upon Defendant David Carpenter's assertion, based on a conversation with one of his friends, that "higher costs" were associated with the Section 8 Housing Choice Voucher program. *See* Attachment A, p. 8-10.

63. In or around January of 2022, the Iowa City Housing Authority, under Section 8 Housing Choice Voucher program, had had the condo inspected, and, approved the condo for move-in by Ms. Farah and her family.

64. From the time Ms. Farah and her family moved into the condo on or around February 4, 2022, until the non-lease renewal on November 28, 2023, or about twenty-two (22) months, Defendants did not raise any concerns whatsoever to Ms. Farah about the Section 8 Housing Choice Voucher program.

65. On January 8, 2026, Defendants, through their agent, Nicole McDonald, an employee of Defendant Nest Property Management and/or The Governor Group LLC, emailed a lease opportunity to Ms. Farah for 2026-2027, with instructions to respond by March 1, 2026.  Ms.

McDonald also texted Ms. Farah alerting her to the email.

66. On or around January 10, 2026, there were at least two visits to the condo by Defendants and/or their agents.

67. Tom Myers, the President of the HOA, visited the condo, in part to review the spindles on the back deck.

68. At least one other male, likely a maintenance person, was present during one or both visits.

69. Ms. McDonald was present during at least one visit.

70. The President of the HOA, Mr. Myers, as well as the maintenance man, during the visit(s) above, saw the race and color of Ms. Farah and/or her children, and also saw Ms. Farah's customary hijab.

71. On January 26, 2026, well in advance of the March 1, 2026 deadline to accept a lease for 2026-2027, Ms. Farah messaged Ms. McDonald that she accepted the lease offered and asked if Defendants would continue to accept Section 8 Housing Choice Voucher payments.

72. On January 27, 2026, Ms. McDonald, on behalf of Defendants, messaged Ms. Farah that lease renewal was no longer an option due to the "condition" of her unit from Defendants recent visits.

73. On January 27, 2026, Ms. McDonald, on behalf of Defendants, sent a lease nonrenewal letter to Ms. Farah purporting to instruct her and her children to vacate on or by February 28, 2026.

74. On information and belief, this lease nonrenewal and instruction for Ms. Farah and her children to vacate on or by February 28, 2026, was based, in part, on race, color, religion, and/or national origin.

75. On January 30, 2026, a routine housing quality standards inspection of the condo was performed by a Building Inspector for the City of Iowa City, in coordination with the Iowa

City Housing Authority.

76. That inspection found nothing wrong in the condo that was Ms. Farah's responsibility.

77. The inspection did determine the owners (Defendants) needed to replace smoke alarms and carbon monoxide detectors as well as repair an electrical outlet that had an open ground.

78. On February 13, 2026, a reinspection occurred, and determined the same issues have yet to be addressed by the owners (Defendants).

79. Ms. McDonald, on behalf of Defendants, continues to send harassing messages demanding Ms. Farah and her children vacate, and even went to Ms. Farah's home in person on February 23, 2026, and pounded on the door, demanding Ms. Farah answer.

80. To date, Ms. Farah's dryer still does not work correctly and the kitchen door is still off the hinges.

81. Ms. Farah and her children have suffered severe emotional distress, anxiety, humiliation, embarrassment and loss of dignitary interests based on Defendants' lease nonrenewals, demands for them to vacate their home, and refusal to address conditions issues.

82. Defendants' course of conduct is egregious, and there is a vast differential in the financial resources between Plaintiff and Defendants.

## CLAIMS

### COUNT 1: VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. § 3604(a)

83. Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

84. 42 U.S.C. § 3604(a) prohibits Defendants from "…refus[ing] to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

85. Defendants and/or their agents issued lease nonrenewals, and demands that Ms. Farah and her children vacate their home, based, at least in part, on the race, color, religion, and/or national origin of Ms. Farah and her children.

86. Accordingly, Defendants have violated, and continue to violate 42 U.S.C. § 3604(a).

87. As a consequence of those violations, Ms. Farah and her children have and continue to suffer harm.

### COUNT 2: VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. § 3604(b)

88. Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

89. 42 U.S.C. § 3604(b) prohibits Defendants from "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

90. Defendants' refusal to accept Ms. Farah's Section 8 Housing Choice Voucher, to renew her lease after offering a new one, or to address conditions issues in her unit, as well as the charge based on assumption that she failed to responsibly dispose of her trash, were all based, at least in part, on the race, color, religion, and/or national origin of Ms. Farah and her children.

91. Accordingly, Defendants have violated, and continue to violate, 42 U.S.C. § 3604(b).

92. As a consequence of those violations, Ms. Farah and her children have and continue to suffer harm.

### COUNT 3: VIOLATION OF THE FAIR HOUSING ACT – 42 U.S.C. § 3617

93. Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

94. 42 U.S.C. § 3617 provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

95. The broad anti-interference protections afforded in 42 U.S.C. § 3617 extend beyond anti-retaliation, including acts of coercion, intimidation, interference, or threats. *See, e.g, Quigley v. Winter*, 598 F.3d 938, 948 (8th Cir. 2010).

96. Defendants and/or their agents coerced, intimidated, threatened and/or interfered with Ms. Farah and her children's housing rights following Ms. Farah availing herself of the fair housing administrative complaint process.

97. More specifically, immediately following the formal processing of her fair housing administrative complaint in September of 2024, Defendants and/or their agents notified Ms. Farah in early October of 2024 that her conditions concerns would not be addressed until after she moved out, and they remain unaddressed to this day.

98. Meanwhile, health and safety measures like smoke detectors and carbon monoxide detectors, as well as an electrical outlet with an open ground, remain unaddressed as well.

99. Accordingly, based on the above, Defendants have violated, and continue to violate, 42 U.S.C. § 3617.

100.   As a consequence of those violations, Ms. Farah and her children have and continue to suffer harm.

### COUNT 4: DECLARATORY JUDGMENT ACT

101.   Plaintiff realleges and incorporates by reference all preceding paragraphs herein.

102.    Ms. Farah and her children are entitled to declaratory relief under 28 U.S.C § 2201 and 28 U.S.C § 2202.  There is an actual controversy within this Court's jurisdiction, and a declaration of rights is necessary to remedy continuing harm resulting from Defendants' ongoing conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and her four children, prays that this Court:

(a)  Enter judgment in their favor on Counts 1, 2, 3 and 4;

(b)  Grant temporary and permanent injunctive relief, pursuant to 42 U.S.C § 3613(c)(1);

(c)  Award actual and punitive damages pursuant to 42 U.S.C § 3613(c)(1);

(d)  Award reasonable attorney's fees and costs pursuant to 42 U.S.C § 3613(c)(2);

(e)  Expedite this action pursuant to 28 U.S.C § 1657(a); and

(f)  Grant such other relief as the Court may deem just and proper.

Dated: February 27, 2026.                    Respectfully Submitted,


                                             **IOWA LEGAL AID**

                                             */s/ Dan Feltes*
                                             Dan Feltes
                                             Iowa Legal Aid
                                             125 S. Dubuque Street, Suite 4A
                                             Iowa City, IA 52240
                                             TEL: (319) 369-3116
                                             EMAIL: dfeltes@iowalaw.org

                                             */s/ Todd Schmidt*
                                             Todd Schmidt
                                             Iowa Legal Aid
                                             744 Main Street, Suite 1
                                             Dubuque, IA 52001-6825
                                             TEL: (563) 588-4653
                                             EMAIL: tschmidt@iowalaw.org

                                             **ATTORNEYS FOR THE PLAINTIFF**